March 25, 2014

Honorable J. Paul Oetken
Southern District of New York
40 Centre Street
New York, NY 10007

Dear Judge Oetken:

It is with pleasure that I write this letter for Gregory Antollino in his application for attorneys' fees, and I declare these statements to be true under penalties of perjury. I have known Greg since we were on the <u>NYU Law Review</u> together. I graduated from NYU in 1994 and then practiced at Wachtell, Lipton Rosen and Katz between 1994 and 1996, at which time I decided that big firm practice was not as attractive as having my own firm, litigating issues that were of concern to me, particularly under the Constitution. [1]

I got to know Greg better when, in or about 1999, and completely by coincidence, he took a case of mine that I had successfully gotten remanded for trial, <u>Norville v. Staten Island University Hospital</u>, 196 F.3d 89 (2nd Cir. 1999). I had to withdraw from that case because I believed it needed a fresh perspective, and was fantastically lucky that Greg took it. After a liability trial, a mistrial on damages, and a trial to verdict on damages, he succeeded in obtaining a 7-figure verdict. After Greg won the trial, he made an application for attorneys' fees for everyone who had been involved. I theoretically had the opportunity to intervene to protect my own financial interest, at the district court level and on appeal, but trusted completely that Greg could handle the matter. In the end, I was awarded an hourly rate $25 higher than his was. I was not present at any of the retrials, but attended oral argument before the Circuit, where Greg handled the argument with aplomb. There was no doubt as we left the room who had been the victor — and the only questions the judges asked were whether plaintiff should get more than the verdict that Judge Dearie had remitted. Shortly thereafter, the Circuit affirmed in a summary order. Shortly thereafter, I was so impressed with the job Greg did that he, my law partner,

---

[1] I was admitted to the New York bar in 1995, however, I am now a full time journalist. I have neglected to re-register my bi-annual license, which has been suspended.

and I discussed his moving into empty space in my office and it was understood by all that this could be a prelude to his joining our firm. Unfortunately, as I recall, Greg's lease didn't end for quite some time.

The civil rights laws attorneys' fee statutes put lawyers at somewhat of a financial disadvantage. Very, very few plaintiffs terminated for discriminatory reasons can afford to pay an hourly rate, and their attorneys must therefore defer payment on a contingency basis. Corporations sued, meanwhile, have vastly more resources to fight these cases with complete abandon. These cases are difficult by their very nature — there's never a smoking gun, and it takes an artist to put together circumstantial evidence to convince first, the judge that there are triable issues of fact; then, the jury that discrimination occurred. If and when the plaintiff wins, there is then a nitpicking contest about how much the attorney should get in fees considering a host of factors that by which defense attorneys are usually unburdened.

Civil rights lawyers take these cases knowing that there is a possibility that they will earn absolutely nothing, and perhaps lose money with expenses. When they win they must be fully rewarded so as to encourage them, as well as other civil rights attorneys, to take cases such as these. Mr. Antollino won a great victory in this case, and, in my opinion he is a truly gifted attorney. An unreduced hourly rate of $500 for the years of effort he put into this case is a gift to the defendant, and I urge the Court to grant his fee request in its entirety.

Sincerely,

Glenn Greenwald