UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                                     :

ANTONIO MUÑOZ
                                  Plaintiff,

                              11-CV-7037 (JPO)
                  -v-

                              OPINION AND ORDER

THE MANHATTAN CLUB TIMESHARE
ASSOCIATION, INC.
                                Defendant.

-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiff, Antonio Muñoz, prevailed against Defendant, The Manhattan Club Timeshare Association, Inc. ("TMC"), in a jury trial in March 2014. Muñoz won a verdict on retaliation claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A), and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code, § 8–107(1)(a). The jury awarded Muñoz damages totaling $615,964.02. Muñoz now moves for attorney's fees and costs. TMC has renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, moves for a new trial under Federal Rule of Civil Procedure 59. For the reasons that follow, Muñoz's motion for fees and costs is granted, but at a reduced amount, and TMC's motions are denied.

**I.     Defendant's Rule 50(b) and Rule 59 Motions**

        Rule 50(b)[1] motions are decided by viewing all evidence in the light most favorable to the jury's verdict. *Zellner v. Summerlin*, 494 F.3d 344, 370–71 (2d Cir. 2007) (citing *Black v.*

---

[1] Muñoz claims that TMC's Rule 50(b) motion is procedurally barred because TMC failed to renew its Rule 50(a) motion at the close of the evidence. This contention is meritless. TMC moved for judgment as a matter of law at the close of the Muñoz's case. That is all that Rule 50 requires. Muñoz's papers cite a case decided under an older version of Rule 50.

*Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005)).  The Court must disregard any evidence that weighs against the jury's verdict unless the jury was required to believe it.  *Id.* at 370 (citing *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150–51 (2000)).  The jury is required to believe the testimony of unimpeached, disinterested, uncontradicted, and plausibly credible witnesses.  *E.g.*, *Reeves*, 530 U.S. at 151; *see also Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir.2006) ("Adverse credibility determinations are appropriately based on inconsistent statements . . . and inherently improbable testimony.") (citation omitted).  The question is whether, if credibility assessments are made against the moving party and all reasonable inferences are drawn against the moving party, a reasonable jury nevertheless would have no choice but to find in the movant's favor.  *Zellner*, 494 F.3d at 370–71 (citing *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993)).

  The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  "[T]he elements of a retaliation claim under . . . the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that the plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against the plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (quotation marks and citation omitted).[2]  "It is well established that requesting an accommodation, without filing a formal charge or engaging in

---

[2] "The . . . NYCHRL contain[s] similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

other specific behaviors listed in § 12203(a), is nonetheless behavior protected from an employer's retaliation." *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 35-36 (1st Cir. 2010) (quotation marks and citation omitted).

Claims for retaliation are analyzed under a burden-shifting framework. *Treglia*, 313 F.3d at 719. Under this framework, while the burden to produce evidence shifts, the ultimate burden of persuasion remains always with the plaintiff. First, the plaintiff has a burden to produce evidence of a prima facie case of the elements of a retaliation claim. "A plaintiff's burden at this prima facie stage is *de minimis*." *Id.* Then "the burden [of production] shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Id.* at 721. If the defendant successfully meets this burden, then "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.* (quotation marks and citation omitted).

TMC concedes that Muñoz has presented sufficient evidence that he was engaged in protected activity, that TMC knew that Muñoz was involved in protected activity, and that an adverse decision or course of action was taken against Muñoz. TMC contends (1) that Muñoz has not put forth sufficient evidence to allow a reasonable jury to conclude that there was a causal connection between Muñoz's protected activity and the adverse employment action;[3] and (2) that the jury had no reasonable basis in the evidence for its damages award. Both contentions are unpersuasive.

---

[3] TMC also contends that Muñoz has not met his *de minimis* burden of producing evidence of causation at the prima facie stage. The Court need not address this contention because it concludes that Muñoz has put forth sufficient evidence of causation even once the burden had shifted back to him.

Muñoz has presented evidence sufficient for a reasonable jury to conclude—as the jury in this case did—that he was fired because he sought an accommodation for his protected disability. For example, Muñoz has offered evidence that TMC employees referred to him as a "complainer" a couple of months after he asked for an accommodation. TMC offered evidence that this comment did not refer to Muñoz and that it may not have been referring specifically to Muñoz's requested accommodation. But the jury was not required to believe TMC's evidence because it was contradicted by testimony from other TMC employees. Similarly, Muñoz has put forth evidence that he was an excellent employee. TMC countered that evidence with evidence that Muñoz was not such a good employee, but, again, the jury was not required to believe that evidence. A reasonable juror could have concluded that Muñoz was an excellent employee, which is circumstantial evidence that he was terminated in retaliation for his protected activity—particularly where, as here, other employees with performance problems were not terminated. Finally, TMC points to the ten-month gap between Muñoz's initial request for an accommodation and his termination as grounds for judgment as a matter of law. But Muñoz has offered evidence that his termination was the capstone to a longer campaign of retaliation that began shortly after his complaint. This is enough for reasonable jurors to conclude that Muñoz was fired in retaliation for his protected activity.

Similarly, the jury's award of damages was reasonable given the evidence in this case. The jury enjoys wide latitude in determining the amount of compensatory damages. *See Zarcone v. Perry*, 572 F.2d 52, 54 (2d Cir. 1978). Muñoz put forth evidence that he suffered extensive emotional distress as a result of his termination. He offered evidence that he suffered from shingles after he was terminated. And he introduced the testimony of a psychologist that the termination was psychologically damaging. From this evidence, the jury could have reasonably concluded that Muñoz was entitled to a substantial compensatory award.

TMC argues, finally, that the jury's award of punitive damages was unreasonable because Muñoz has not put forth evidence of "malice or reckless indifference or egregious or outrageous behavior." (Defendant's Memorandum of Law, at 21 (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011).) But Muñoz has put forth both direct and circumstantial evidence that TMC acted with retaliatory intent, as described above. A reasonable jury could conclude, as this one did, that TMC acted with at least reckless indifference to Muñoz's rights under the ADA and the NYSHRL.[4]

## II.  Attorney's Fees and Costs

Prevailing plaintiffs under the ADA may be granted reasonable attorney's fees and costs associated with the litigation. 42 U.S.C. § 12205 ("[T]he court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."). The parties do not dispute that—at least now that Defendant's Rule 50(b) motion has been denied—Muñoz is the prevailing party. Instead, they dispute the amount of Muñoz's lead counsel's reasonable fee and the reasonable fee for his co-counsel, Mssrs. Cardinale, Sanchez, and Harris, and Ms. Richardson.

Fee awards are calculated using the "presumptively reasonable fee" method. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). The presumptively reasonable fee is arrived at by "multiplying the number of hours reasonably expended on the litigation . . . by an hourly rate." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir.1998). Under this method, "district courts are advised to bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."

---

[4] For the same reasons that TMC is not entitled to judgment as a matter of law, a new trial is unwarranted.

*Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009) (internal quotation marks and citations omitted). "The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Id.* at 174 (quoting *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 715 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Arbor Hill*, 493 F.3d at 119 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). Finally, courts should discount the final award if the plaintiff was less than fully successful.[5] *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Notwithstanding this general methodology, some discretion is necessary in determining a reasonable fee. The Supreme Court "emphasize[s] . . . that the determination of fees should not result in a second major litigation . . . . [T]rial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (internal quotation marks and citations omitted).

### A.     Reasonable Hourly Rate

The parties dispute the reasonable hourly rate applicable to each of Muñoz's lawyers. Muñoz hired Gregory Antollino, Richard Cardinale, Jhon Sanchez, Amari Richardson, and Alan Harris to represent him in this case.

---

[5] Given the facts of this case, there can be no serious dispute that an award of more than $600,000 constitutes a complete success. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Mr. Antollino is lead counsel in this matter. Muñoz asks that his time be billed at $500 per hour; TMC contends that his time is worth no more than $350 per hour. Other courts in this district have recently held that $450 per hour "is within the reasonable range for [experienced] attorneys . . . litigating civil rights cases in the Southern District of New York." *Access 4 All, Inc. v. Mid-Manhattan Hotel Associates LLC*, 13-CV-7995 JMF, 2014 WL 3767009 (S.D.N.Y. July 31, 2014) (citing and quoting *Greene v. City of New York*, No. 12–CV–6427 (SAS), 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) ("[P]recedent in the Southern District reveals that rates awarded to experienced civil rights attorneys [in the 10 years prior to a 2008 survey] have ranged from $250 to $600."); *see also Ognibene v. Parkes*, No. 08-CV-1335-LTS-FM, 2014 WL 3610947 (S.D.N.Y. July 22, 2014) ("Over the last ten years, courts in this District have awarded rates to experienced civil rights attorneys in the range of $250 to $600 and to associates in the range of $200 to $350, with average rates increasing over time.") (internal quotations and citations omitted). Six years ago, Mr. Antollino, an experienced civil rights attorney, was granted $325 per hour for his work in an ADA case under Southern District of New York rates. *See Simmons v. New York City Transit Auth.*, CV-02-1575, 2008 WL 630060 (E.D.N.Y. Mar. 5, 2008), *vacated*, 575 F.3d 170 (2d Cir. 2009).[6] Adjusting that figure upward for the growth in billing rates over the intervening six years, and considering the factors listed in *Arbor Hill*, the Court concludes that $400 per hour is a reasonable rate for Mr. Antollino's services.

Mr. Cardinale is an experienced civil rights attorney with almost twenty years in practice. The Court applies the same hourly rate to his time as it does to that of Mr. Antollino: $400.

---

[6] The district court's fee award was vacated in this case because the court chose to apply the prevailing rate for attorneys in the Southern District of New York, rather than the lower rate that prevails in the Eastern District. The instant case was litigated in the Southern District, so those rates are appropriate here.

TMC contends that Mr. Sanchez's time should be billed at $75 per hour—the prevailing rate for paralegals in this district—because his work could have been done by a paralegal. Muñoz asks for $150 per hour for Mr. Sanchez's time.  Several recent cases from this district have held that paralegal time is reasonably billable at between $75 and $200 per hour.  *Compare Moon v. Gab Kwon*, 99 CIV. 11810 (GEL), 2002 WL 31512816, at *2 (S.D.N.Y. Nov. 8, 2002) ("In the Southern District, paralegal fees have recently been awarded at rates ranging from $75 to $130, depending on the amount of experience possessed by the paralegal."), *Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, 04 CIV. 2983 DLC/KNF, 2006 WL 5804603 (S.D.N.Y. Dec. 11, 2006), *report and recommendation adopted*, 04 CIV. 2983 (DLC), 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) ("$200 is a reasonable hourly rate for the work performed by a senior paralegal . . . .").  Because Mr. Sanchez's work is at least as valuable as a paralegal—and probably more valuable—the Court concludes that $150 per hour is a reasonable rate for his time.

While TMC argues that all but 3.1 hours of Mr. Harris's services were performed before Muñoz was terminated by TMC and are therefore unrecoverable, it raises no objection to his requested billable rate, and the Court adopts it: $400 per hour.  Similarly, TMC argues that Ms. Richardson's hours should be billed at a paralegal rate, but does not dispute that her hourly rate as an attorney and paralegal, respectively, should be $250 and $125.  The Court adopts these rates as well.

### B.     Reasonable Work

TMC raises several objections to how Muñoz's lawyers spent and billed their time.  The Court has undertaken an independent review of the bills and has determined that there are some items that may not be reasonably billed.  The Court will not exhaustively review every line item

in Muñoz's bills, but will instead offer examples of some of the recurring issues that ultimately justify a reduced award.

First, Mr. Antollino's bills are on several occasions insufficiently specific to satisfy the Court that he is entitled to an award based on them. For example, he billed 32.6 hours, over the course of three days, for "In no particular order, and as client and attorney Jhon Sanchez were available for different tasks including: Antollino Dec, and assembling attachments, Muñoz Dec and assembling 29 attachments, 56.1 opposition & memorandum of law." (Antollino Declaration.) In a similar vein, he billed on several occasions for administrative tasks that are not properly recoverable as attorney's fees. (*See* Defendant's Memorandum, at 8 n.3 (listing examples of bills for administrative tasks.)

Next, Mr. Cardinale's bills are occasionally duplicative and often reflect work that would not be considered necessary to an ordinary paying client. For example, he billed twice for proofreading certain documents and he billed for certain tasks for which Mr. Antollino also billed.

Finally, Mr. Sanchez and Ms. Richardson performed tasks that are largely administrative in nature or unnecessary. Muñoz, for example, billed for time that Sanchez and Richardson spent passively attending depositions and preparing exhibits.

Much of Mr. Harris's billed time is not recoverable because Muñoz has not shown that Harris's work relates to the retaliation claim on which Muñoz eventually prevailed. All but three hours of the work took place before Muñoz's termination. TMC contends that this fact alone renders all of that work unrecoverable. Muñoz disagrees. The Court need not answer this question, though, because it remains Muñoz's burden to show that these fees were reasonable in relation to a claim on which he ultimately prevailed. Mr. Harris's bills report his work in a quite general fashion. Therefore, the Court cannot fairly determine whether the time he spent working

9

for Muñoz prior to his termination is reasonable in relation to the retaliation claim because it is just as likely that the time was spent working on Muñoz's other, ultimately unsuccessful, claims.

The above issues justify reducing the overall fees for Mssrs. Antollino, Cardinale, and Sanchez, and Ms. Richardson by 15%, and reducing Mr. Harris's fee to only those hours worked after Muñoz's termination.

**C.     Costs**

TMC claims that Muñoz is not entitled to recover his costs in this action because Muñoz's counsel did not submit any documentation of those costs. In response, Muñoz's lead counsel has submitted receipts. The Court has reviewed them and concludes that Muñoz's costs are reasonable.

**D.     Summary**

The total recoverable fees and costs are as follows:

Mr. Antollino: $400/hour for 179 hours, reduced by 15%, for a total of $60,860.

Mr. Cardinale: $400/hour for 150.5 hours, reduced by 15%, for a total of $51,170.

Mr. Sanchez: $150/hour for 19.25 hours, reduced by 15%, for a total of $2,454.38.

Mr. Harris: $400/hour for 3 hours, reduced by 0%, for a total of $1,200.

Ms. Richardson: $125/hour for 89.35 hours, reduced by 15%, for a total of $9,493.44.

Costs: $9,434.39

GRAND TOTAL: $134,612.21

### III.   Conclusion

For the foregoing reasons, TMC's motions for judgment as a matter of law and a new trial are DENIED.  Muñoz's motion for fees and costs is GRANTED in the amount of $134,612.21.  The Clerk of the Court is directed to close the motions at docket numbers 94, 98, and 107.

SO ORDERED.

Dated: September 18, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge